UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DUKES BRIDGE LLC,

                      Plaintiff,                    MEMORANDUM
                                                          AND ORDER
  -against-
                                                          10 CV 5491 (ILG)(RML)

SECURITY LIFE OF DENVER
INSURANCE COMPANY,

                      Defendant.
--------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Plaintiff Dukes Bridge LLC ("plaintiff" or "Dukes Bridge") moves to compel defendant Security Life of Denver Insurance Co. ("defendant" or "Security Life") to deposit with the Clerk of the Court sufficient sureties to secure payment of any final judgment, in accordance with N.Y. Ins. Law § 1213(c)(1), and to strike defendant's pleadings for its failure to comply with the pre-pleading payment security provisions of § 1213(c)(1). For the reasons stated below, plaintiff's motion is denied.

### BACKGROUND AND FACTS

        Plaintiff commenced this diversity action on November 29, 2010, seeking payment of the $10 million death benefit of a life insurance policy issued by defendant. (See Complaint, dated Nov. 29, 2010 ("Compl.").) The basic facts, as alleged by plaintiff, are as follows:

        On September 17, 2007, defendant issued Flexible Premium Adjustable Life Policy No. 1628906 ("the Policy"), insuring Eugene Mermelstein's life in the amount of $10 million. (Id. ¶ 16, Ex. A at 1.) On or about October 23, 2007, Mermelstein, a New York

resident, established the E. Mermelstein IRR Trust A (the "Trust") in New York State. (Id. ¶ 12.) The Trust was subsequently named the sole beneficiary of the Policy. (Id. ¶ 16.)

The Trust then entered into a Speciality Finance Loan Agreement with Aqua Blue Wealth Management, LLC ("Aqua Blue"), effective January 22, 2008. (Id. ¶ 25.) Under the Finance Agreement, Aqua Blue lent money to the Trust to fund the premiums due on the Policy for twenty-seven months. (Id.) To secure the loan, the Trust provided Aqua Blue with "a collateral assignment of all of the Trust's right, title and interest under the Policy, including the Trust's right to the Policy's death benefit." (Id.) Aqua Blue made the loan to the Trust with funds that it had itself borrowed from another entity, Ridgewood Finance ("Ridgewood"), pursuant to a Line of Credit and Security Agreement. (Id. ¶ 26.) The loan was intended to aid Aqua Blue in providing premium finance loans to trusts that owned life insurance polices; pursuant to the Line of Credit and Security Agreement, Aqua Blue assigned to Ridgewood its right, title and interest in the subject policies, including those assigned by the various trusts that owned the policies. (Id.)

Mermelstein died on February 20, 2009 of natural causes (id. ¶ 28), and on February 27, 2009, Esther Fried, as Co-Trustee of the Trust, submitted an application for death proceeds under the Policy (id. ¶ 29). Although defendant acknowledged receipt of the application and requested additional documentation, it did not pay the death claim. (Id. ¶¶ 30, 31.)

Meanwhile, both Aqua Blue and the Trust defaulted on their respective loans. Following Aqua Blue's November 2009 default of its agreement with Ridgewood, in lieu of a foreclosure, the two parties agreed to a voluntary settlement; as part of this agreement,

Ridgewood assigned all of its rights under the Finance Agreement with the Trust to plaintiff.[1] (Id. ¶ 32.) Next, on or about January 5, 2010, plaintiff notified the Trust that it had defaulted under the Finance Agreement and demanded repayment of the loan Aqua Blue had provided it, as well as interest and costs. (Id. ¶ 33.) On June 23, 2010, a public auction was held, and plaintiff acquired the Policy outright. (Id. ¶ 35.) Since that time, plaintiff has been attempting to secure the death benefit from defendant. (Id. ¶ 40.)

In this action, plaintiff seeks the full amount of the Policy, plus interest, as well as a declaratory judgment that the Policy is a valid, enforceable contract and that plaintiff is entitled to receive the death benefit. However, defendant claims that it has not paid plaintiff the death benefit because it believes that information in and documents submitted along with the application for the Policy were fraudulent.[2] Along with its answer, defendant interposed counterclaims of fraud, material misrepresentation, and lack of insurance interest. (Answer and Counterclaim, dated Jan. 21, 2011 ("Answer"), ¶¶ 132–146.) Defendant seeks rescission of the Policy, an order declaring the Policy *void ab initio*, all premiums paid on the policy, as well as damages and costs. (Id. at 17.)

Plaintiff now moves to compel defendant, as a purportedly unauthorized foreign insurer, to deposit with the Clerk of the Court cash, securities, or a bond with sufficient sureties

---

[1] Plaintiff is a limited liability company whose sole member is Ridgewood Finance II LLC, sucessor in interest to Ridgewood. (Compl. ¶ 2.)

[2] Defendant asserts that it now believes that Mermelstein's annual interest and other income, and net worth, as well as the status of other life insurance polices, may have been misrepresented on the application. (Answer and Counterclaim, dated Jan. 21, 2011, ¶ 127.) In addition, defendant now believes that Mermelstein may not have executed all the documents purporting to contain his signature. (Id. ¶ 128.)

to secure payment of any final judgment and immediately strike the pleadings filed by defendant.

**DISCUSSION**

N.Y. Ins. Law § 1213(c)(1) states that before any unauthorized foreign or alien insurer files any pleading in any proceeding against it, it shall either:

> (A) deposit with the clerk of the court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding, but the court may in its discretion make an order dispensing with such deposit or bond if the superintendent certifies to it that such insurer maintains within this state funds or securities in trust or otherwise sufficient and available to satisfy any final judgment which may be entered in the proceeding, or
> (B) procure a license to do an insurance business in this state.[3]

In other words, this section requires a non-resident insurer not authorized to do business in New York to deposit a security or post a bond sufficient to secure payment of a final judgment before it files any pleading. Defendant does not dispute that it is an unauthorized foreign insurer but argues that plaintiff is not entitled to take advantage of the security provision of § 1213(c)(1).

The security requirement of § 1213(c)(1) is meant to "ensure that a New York resident will be able to proceed against an out-of-state insurer in New York." Quanta Specialty Lines Ins. Co. v. Investors Capital Corp., No. 06 CIV. 4624, 2008 WL 1910503, at *7 (S.D.N.Y. Apr. 30, 2008) (citing British Int'l Ins. Co. Ltd. v. Seguros La Republica, 212 F.3d 138, 140 (2d Cir. 2000)); see also Allstate Ins. Co. v. Administratia Asigurarilor de Stat, 875 F. Supp. 1022, 1025 (S.D.N.Y. 1995) ("[S]ection 1213 was enacted to aid New York residents who are insured

---

[3] There are two statutory exceptions to the requirement but neither is argued here.

by foreign insurance companies that are not authorized to do business in New York."); N.Y. Ins. Law § 1213(a) ("The legislature declares that it is a subject of concern that many *residents* of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such *residents* the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies." (emphasis added)). As a result, courts have consistently held that only New York residents or non-resident corporations who are authorized to do business within the state are entitled to invoke the pre-answer security provision of the statute. See, e.g., Morgan v. Am. Risk Mgmt, Inc., No. 89 CIV 2999, 1990 WL 106837, at *6–7 (S.D.N.Y. July 20, 1990) (stating that § 1213 may only be invoked by residents of New York or corporations authorized to do business in New York (citing Clifton Prods., Inc. v. Am. Universal Ins. Co., 169 F. Supp. 842, 845 (S.D.N.Y. 1959)); see also Quanta Specialty Lines Ins. Co., 2008 WL 1910503, at *8.

Plaintiff is not a New York resident, but a Delaware corporation that purchased the Policy at a public auction, following a series of transactions that plaintiff described as assignments from the Trust to Aqua Blue, to Ridgewood, and finally to plaintiff. Nonetheless, plaintiff argues that it is entitled to invoke the pre-answer security requirement of § 1213(c)(1) because the Trust was "established by a New York resident, is governed by New York law, and has its situs in New York." (Plaintiff's Motion for a Pre-Motion Conference, dated Feb. 10, 2011 ("Pl.'s Mem."), at 2; see also Transcript of Oral Argument, dated Mar. 3, 2011 ("Tr."), at 3–4.) Plaintiff contends that because the original owner of the Policy—the Trust—would have been entitled to invoke the provision, it, as a successor in interest, should be entitled to do so as well. (Tr. at 4; see also Pl.'s Mem. at 3 (citing Am. Centennial Ins. Co. v. Seguros La Republica, S.A.,

No. 90 CIV. 2370, 1998 WL 748648, at *4 (S.D.N.Y. Oct. 21, 1998)).) In support of this argument, plaintiff asserts that American Centennial stands broadly for the proposition that, for the purpose of determining whether a plaintiff can invoke § 1213, the relevant inquiry is not whether the plaintiff is a New York resident or authorized foreign corporation but whether the initial party to the insurance contract was. However, although the court in American Centennial allowed an assignee to benefit from the security requirement of § 1213(c)(1) in part because the assignor was a New York resident, plaintiff's reliance on that case is misplaced.

Plaintiff encourages the court to read American Centennial as holding that assignees can invoke § 1213(c)(1) at any time if the original party in interest could have. However, I find no basis to do so. In American Centennial, the question was whether the defendant was still obligated to post security, even though the court had granted a motion for substitution of a non-resident assignee for the original plaintiff. At the request of the original plaintiff, a New York resident and the original party to the insurance contract, the court had already directed the defendant to post security. Given the substitution of the plaintiff, defendant was requesting that the court vacate its order. The court refused to do so because the "determinative time for a proper invocation of § 1213 is at the beginning of a lawsuit . . . ." 1998 WL 748648, at *4. The court's holding in that case was a narrow one—although the substitute plaintiff could not have invoked § 1213 had it brought suit initially, it became an incidental beneficiary of the statute because its predecessor in interest had already invoked its protections under the law. In other words, the court refused to vacate its order not simply because the assignor was a New York resident but because the assignor was the original plaintiff and had

properly invoked § 1213 upon commencement of the lawsuit.[4] Unlike in American Centennial, the original policyholder here (the Trust) was never a plaintiff in the litigation and has not previously asserted its rights under the statute.

Plaintiff has cited no other relevant authority[5] and this court has found none to support the general proposition that an assignee can assert the same rights under § 1213 as the original party in interest could have.[6] Moreover, as defendant argues (see Defendant's Memorandum of Law, dated Feb. 11, 2011, at 2), plaintiff, a non-New York resident far removed from the original policyholder, can hardly be said to be within the class of individuals whom the statute was meant to protect. Indeed plaintiff "knowingly and intentionally purchase[d]" the policy at a public auction "with full knowledge that the insurance company [was] an unauthorized insurer." (Id.) It then chose to bring suit in New York. As a far-removed

---

[4] The court in American Centennial also stressed that the substitution of the subsidiary pursuant to Fed. R. Civ. P. 25(c) was entirely procedural and had "no substantive effect on the matter." 1998 WL 748648, at *3 (citation omitted).

[5] Plaintiff also cites Morgan v. American Risk Management., Inc., No. 89 Civ. 2999, 1990 WL 106837 (S.D.N.Y. July 20, 1990), in support of its motion. (See Letter by Dukes Bridge, dated Mar. 15, 2011 (Dkt. Entry #16), at 2.) In Morgan, the court held that the fact that the plaintiff was no longer authorized to do business in New York was irrelevant to its right to invoke the protections of § 1213 because it was so authorized at the time the contract was executed and delivered. Id. at *7. While the court thus held that the residency of the plaintiff at the time the contract was made determined whether it could utilize the protections of the statute, it did not speak at all to situations involving successors in interest. Thus, it provides no support to plaintiff's position regarding the rights of successors in interest under the statute.

[6] It also bears noting that even if American Centennial fairly stood for the proposition that assignees can invoke § 1213 simply because the original party in interest would have been able to do so, plaintiff can hardly be characterized as a typical assignee. In fact, it is arguably four steps removed from the original New York resident ((1) a loan agreement between Aqua Blue and Ridgewood, (2) a loan agreement between the Trust and Aqua Blue, (3) a settlement agreement that transferred Rigewood's interest to plaintiff, and (4) a public auction at which plaintiff purchased the Policy outright). Plaintiff thus bears little connection to the original policyholder.

successor in interest and non-New York resident, plaintiff has not met its burden of showing that it is either an intended or incidental beneficiary of the statute and may not invoke its protections.

Because plaintiff cannot invoke the protections of § 1213(c)(1), plaintiff's motion to compel the posting of a security and the striking of defendant's pleadings is denied.[7]

SO ORDERED.

Dated: Brooklyn, New York
July 20, 2011

/s/
ROBERT M. LEVY
United States Magistrate Judge

---

[7] Because plaintiff cannot invoke the protections of the statute, it is unnecessary to consider defendant's other arguments for why it should not have to post security, including that defendant is an accredited reinsurer in New York State. (See Def.'s Mem. at 2; Letter by Security Life, dated Mar. 14, 2011 (Dkt. Entry #15), at 1–2.)