UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
DUKES BRIDGE LLC,

   Plaintiff,

  - against -

SECURITY LIFE OF DENVER INSURANCE
COMPANY,

   Defendant-Counterclaim Plaintiff,

  - against -

DUKES BRIDGE LLC, RCX I LLC, *et al.*,

   Counterclaim Defendants.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
10-CV-5491 (ILG) (RML)

GLASSER, Senior United States District Judge:

After Dukes Bridge LLC ("Dukes Bridge") brought an action against Security Life of Denver Insurance Company ("Security Life") seeking the payment of life insurance benefits, Security Life brought counterclaims accusing Dukes Bridge, other entities, and individuals ("Counterclaim Defendants") of, among other things, fraud. One Counterclaim Defendant, Jewel Strader, has moved to dismiss for lack of personal jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). For the reasons given below, this Court lacks jurisdiction over Strader; thus, her Rule 12(b)(2) motion to dismiss is GRANTED.

## 1 BACKGROUND

The facts of this case are described in this Court's prior orders, familiarity with which is assumed. *See Dukes Bridge LLC v. Sec. Life of Denver Ins. Co.*, 2015 WL 3755945 (E.D.N.Y. June 16, 2015); *Dukes Bridge LLC v. Sec. Life of Denver Ins. Co.*, 2013 WL 432894 (E.D.N.Y. Feb. 4, 2013). The relevant allegations and jurisdictional discovery are summarized below.

Security Life—a Colorado company—alleges that the Counterclaim Defendants engaged in a fraudulent scheme to obtain from it an insurance policy on the life of Eugene Mermelstein, a New York resident. *See* Second Am. Countercl., Dkt. 109, ¶¶ 84, 105–115; CPX 2.[1] Mermelstein's life insurance application originated in New Jersey.[2]

During the application process, Security Life received an inspection report (third-party verification of Mermelstein's financial information) written by Strader—a Texas domiciliary. *See* Second Am. Countercl., ¶¶ 99, 150; CPX 1. The inspection report was requested via email by non-party insurance brokers from New York. *See* CPX 2, 5; Strader Dep., Dkt. 175-1, at 73, 114. The brokers' request included Mermelstein's address and phone number, and a list of insurers. *See* CPX 5. After conducting phone-interviews with Mermelstein and a person who claimed to be his accountant,[3] Strader prepared the inspection report and emailed it to the insurers. *See* CPX 2, 4, 7; Strader Dep. at 81–85, 94–95, 117–19. Security Life alleges that the inspection report contained false information. *See* Second Am. Countercl., ¶¶ 193–196.

Strader wrote inspection reports as an independent contractor for Hooper Holmes Inc. ("Hooper"), an information-gathering company. While Hooper is incorporated in New York, there is no evidence that Hooper has an office there; Strader's contract is signed by a manager of its Kansas branch. *See* CPX 1.[4] According to Strader, Hooper acted as her "billing company." Strader Dep. at 46. Insurance brokers requested inspection reports from Strader (using a form she

---

[1] "CPX" refers to Countercl. Pl.'s Group Ex. A, Dkt. 175-1.

[2] *See* Application, Dkt. 9-1, at 13 (stating that "all communications, solicitation, and negotiation . . . occurred in the Application State [i.e., New Jersey]," that the application was "signed by the owner/applicant and the agent in the Application State," and that the "owner/ applicant will take delivery of the policy issued . . . in the Application State"); *see also* Second Am. Countercl., ¶ 158.

[3] Security Life alleges that the "'accountant' described in the Inspection Report was fictitious." Second Am. Countercl., ¶ 196; *see also* Countercl. Pl's Mem. of Law, Dkt. 175, at 10 n.7.

[4] Hooper and Strader's contract is governed by New Jersey law. *See id.* at 2.

created), and she wrote and sent her reports directly to insurers. *Id.* at 47–54, 79–80, 116. Strader used her own email address and domain, kept her own files, and did not receive training or report to a supervisor. *Id.*, at 29, 46, 55, 63–64, 71. Periodically, Strader faxed billing reports to Hooper's office in Kansas. *Id.* at 53, 68, 151. Hooper then billed the insurers, collected fees, and remitted 50 to 75% of each fee to Strader. *Id.* at 46, 53–54; *see also* CPX 1.

## 2     LEGAL STANDARD

Security Life bears the burden of establishing personal jurisdiction over Strader. *See Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Because there has been jurisdictional discovery but no evidentiary hearing or trial, Security Life must make a "prima facie showing . . . of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). The evidence must be construed, and ambiguities resolved, in Security Life's favor. *See Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563, 567 (S.D.N.Y. 2006).

## 3     DISCUSSION

Strader—a domiciliary of Texas—argues that this Court lacks jurisdiction over her. The Court agrees and therefore grants Strader's motion to dismiss.

Generally, in a diversity action, a district court "may exercise personal jurisdiction to the same extent as the courts of general jurisdiction of the state in which it sits," so long as that exercise of jurisdiction is consistent with due process. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002) (citing Fed. R. Civ. P. 4(k)(1)(A)). The determination of whether Strader is subject to this Court's jurisdiction thus begins with an inquiry into whether New York's long-arm statute, CPLR §§ 301–302, authorizes jurisdiction over her. *See id*; *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016).

3

Security Life invokes CPLR § 302(a)(1), which provides for jurisdiction over a non-domiciliary who purposefully transacted business within New York, so long as the transaction gave rise to the cause of action. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988). "Transacting business" is defined as "purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Best Van Lines v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quotation omitted); *accord Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) (the "overriding criterion" is whether "the defendant purposefully avail[ed] itself of the privilege of conducting activities within New York"). To determine whether a non-domiciliary transacted business in New York, courts assess the "totality" of the defendant's activities in New York (*Best Van Lines*, 490 F.3d at 246), keeping in mind that it is the "nature and quality, and not the amount of New York contacts [which] must be considered," *Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F. Supp. 1040, 1051 (S.D.N.Y. 1987) (quotation omitted) (brackets in original); *accord Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007). While the defendant "need not be physically present" in New York for a court to exercise personal jurisdiction, "there must be some transaction attributable to [the defendant] which *occurs in New York*." *Bank Brussels*, 171 F.3d at 787–88 (quotation omitted).

Strader did not transact business in New York: she prepared in Texas an inspection report and then sold it to an insurance company in Colorado. The fact that Strader prepared the inspection report at the request of New York insurance brokers does not establish that she transacted business in New York. *See id.* at 788–89 (quoting *Mayes v. Leipziger*, 674 F.2d 178, 185 (2d Cir. 1982)) ("[N]o court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York to perform services outside of New

4

York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York.").

Similarly, the fact that Strader called the proposed insured and his accountant, residents of New York, does not suffice to establish personal jurisdiction under Section 302(a)(1). "[C]ourts have routinely held that . . . telephone calls with an out-of-state defendant are not enough to establish personal jurisdiction under Section 302(a)(1)." *Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, 2015 WL 5751252, at *4 (S.D.N.Y. Sept. 30, 2015) (citing cases); *see also Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983). Those "communications confer jurisdiction . . . only if, through them, the defendant projects itself into New York events and can be said to have engaged in extensive purposeful activity in New York." *Bissonnette v. Podlaski*, 2015 WL 5853834, at *6 (S.D.N.Y. Oct. 7, 2015) (quotations omitted); *see also Fiedler v. First City Nat'l Bank of Houston*, 807 F.2d 315, 317 (2d Cir. 1986) (communications confer jurisdiction only if the defendant used them as a "means of projecting [itself] into the local commerce").

That is not the case here. As noted above, Strader prepared in Texas an inspection report for a Colorado insurer, in connection with an insurance application originating in New Jersey. "[C]alls to New York to perform [those] non-New York services do not support personal jurisdiction under Section 302(a)(1) against non-resident defendants." *Lipson v. Birch*, 46 F. Supp. 3d 206, 218 (E.D.N.Y. 2014) (quotation omitted) (citing *Mayes*, 674 F.2d at 185); *cf. Bank Brussels*, 171 F.3d at 787–79 (holding that a Puerto Rican law firm did not "transact business" in New York when it was hired to write an enforceability opinion for New York banks that were negotiating a credit agreement in New York, though the law firm communicated with New York banks and lawyers to negotiate their agreement for legal services and while preparing the

opinion); *Miller Inv. Trust v. Xiangchi Chen*, 967 F. Supp. 2d 686, 694 (S.D.N.Y. 2013) (holding that a Utah accounting firm did not transact business in New York when it agreed to reaffirm an audit report and provide comfort letters to "a New York bank to facilitate a New York transaction"). In sum, a Texas domiciliary does not, by writing a report for a Colorado company about a person who resides in New York, "purposefully avail[] [her]self of the privilege of conducting activities within New York." *Ehrenfeld*, 9 N.Y.3d at 508.

Security Life asserts that personal jurisdiction can be based on the fact that Strader contracted with Hooper, a New York corporation. But there is no evidence that Hooper had agents or offices in New York—Strader only communicated with Hooper's Kansas office. Moreover, Security Life's claims arise from Strader's preparation of the Mermelstein inspection report. In that transaction, Hooper's limited involvement did not touch New York: after Strader faxed a billing report to its *Kansas* office, Hooper sent an invoice to Security Life (there is no evidence that the invoice, payment, or any communication was sent to or from New York). The mere fact that Hooper is incorporated in New York is too insubstantial to establish that this transaction occurred in New York.

Security Life further asserts that this Court has jurisdiction over Strader because between 2005 and 2008 she prepared hundreds of inspection reports about New York insurance applicants or at the request of New York insurance brokers. *See* Countercl. Pl.'s Ex. B, Dkt. 175-2. Because these reports are unrelated to Security Life's cause of action, however, they do not establish personal jurisdiction under Section 302(a)(1). *See Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 378 (2014) ("To the extent plaintiff argues that by sheer volume of contacts, defendants are subject to personal jurisdiction in New York, we disagree. As we have stated it is not the quantity but the quality of the contacts that matters under [Section 302(a)(1)]."). As detailed

above, the totality of Strader's relevant contacts do not establish a transaction in New York; therefore, asserting jurisdiction under Section 302(a)(1) would be improper.

## CONCLUSION

This Court lacks jurisdiction over Jewel Strader. Therefore, her motion to dismiss for lack of personal jurisdiction is GRANTED, and the claims against her are dismissed.[5]

SO ORDERED.

Dated:	Brooklyn, New York
	April 27, 2016

　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　I. Leo Glasser
　　　　　　　　　　　　　　　　　　Senior United States District Judge

---

[5] As there is no jurisdiction over Strader, the Court does not address her arguments that the claims against her are time-barred and that Security Life has failed to state a claim of civil conspiracy or a violation of the New Jersey Fraud Prevention Act.